IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JIMMY DWAYNE RUSSELL					PLAINTIFF

v.			Civil No. 5:15-cv-05082

SHERIFF TIM HELDER and
OFFICER MARSH						DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights case filed by the Plaintiff, Jimmy Dwayne Russell, pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Varner Unit of the Arkansas Department of Correction (ADC).  The events at issue in this case occurred while he was incarcerated in the Washington County Detention Center (WCDC).  Specifically, he contends his constitutional rights were violated in the following ways: (1) not being allowed to shave or get a hair cut except when going to court; (2) no, or limited, access to the outdoors for exercise purposes and no exercise equipment; (3) no access to television (TV); (4) being singled out by Officer Marsh for harassment and retaliation since he filed another civil rights case *Russell v. Sheriff Helder and Dr. Neil Mullins.,* Civil No. 14-5168 (filed 6/9/2014); and, (5) no access to legal materials including the United States Constitution or Bill of Rights.

Defendants filed a Summary Judgment Motion. (Doc. 22)  A hearing was held on January 19, 2016, to allow the Plaintiff to testify in response to the Motion.  The Motion is ready for decision.

## I. Background

Plaintiff was booked into the WCDC on March 25, 2014. He was transferred to the ADC on October 6, 2015.

On January 17, 2015, and June 15, 2015, Plaintiff requested a hair cut or a shave for court. *Defts' Ex.* A-1 at 190; *Defts' Ex.* A-1 at 240.[1] His requests were denied and he was told they only did court shaves for trials and/or pleas in the Circuit Court. Plaintiff testified he was otherwise able to maintain his personal hygiene with items other than a razor. He did not suffer any injury as a result of not getting hair cuts or shaves, but he did believe it affected him mentally as it contributed to his feeling of constant despair. He testified that the inmates looked more like beasts than humans. To him, looking clean cut and feeling good about yourself goes hand in hand.

Plaintiff testified he submitted requests several times complaining about the quality or type of exercise available to the inmates. He indicated inmates were able to walk and do push-ups or sit-ups. He testified, however, the uniforms were made out of a thick canvas type fabric that deters exercise because you overheat yourself. He also indicated that inmates were reprimanded for using anything, such as tables or the stairs, to work out.

According to Plaintiff, inmates were allowed outdoors infrequently even though there were days when it was nice enough to go out. The outside recreation area was about twenty feet by twelve feet in size. He indicated you could not see the trees or the grass from the recreation yard. Plaintiff testified that recreation was often allowed in the early morning when it is the coldest and few people decided to go. Plaintiff believed he suffered a decline in his mental health as a result

---

[1] The page references in Exhibit A-1 are to the jail file page contained at the bottom center of each page.

of not having access to the outdoors. Additionally, he believes the lack of the physical outlet that results from exercise served to build aggression in the jail.

Inmates, other than trustees, did not have access to television. Radio was provided but Plaintiff testified he could only hear it for thirty minutes in the morning. Inmates did not have access to board games. He believed the lack of access to television and games took a form of recreation away from inmates and prevented them from getting their minds off their time in jail. After he filed this lawsuit, Plaintiff testified televisions were put in the units and inmates were provided board games. In Plaintiff's opinion, this was an admission of guilt. It was his belief that giving the inmates some form of recreation would provide a way to release aggression thereby reducing the number of fights and suicides.

With respect to access to legal materials, Plaintiff testified there was none. Instead, inmates were advised to talk to their attorneys. Plaintiff indicated he wanted access to legal materials including the United States Constitution and the Bill of Rights, for both civil and criminal cases. Plaintiff did have an attorney to represent him in his criminal case. Plaintiff indicated, however, he did not know if he was being treated fairly due to his lack of access to legal materials.

Plaintiff contends Officer Marsh retaliated against him by taking his books and his medical mattress. According to the rules, inmates were only allowed to have three books. There were times Plaintiff had as many as twenty-three books. On the average, Plaintiff testified inmates had twenty books. Plaintiff conceded that books could be used to hide contraband.

Plaintiff testified he was in a motorcycle accident prior to his incarceration and his pelvis and hip were "held together by screws." For this reason, he was authorized to have a "medical mattress" or second mattress.

Plaintiff testified Marsh would take away his books and his medical mattress. Plaintiff indicated this happened frequently. Although he had more books than the rules authorized, Plaintiff testified he was the only inmate whose books were taken away. Once, when Plaintiff complained about being singled out, Marsh took books from all the inmates.

On one occasion when his mattress was taken, his leg was swollen the followed morning. He was seen by medical staff and a Doppler ultrasound was done of his leg. A second blanket or towel was ordered so he could elevate his leg. Plaintiff had no idea if medical mattresses were being taken from other inmates at the same times his were taken.

When Marsh would take his medical mattress, Plaintiff testified the next shift would return it. He did not believe he had ever gone more than eight hours without it.

When his requests were denied, he did not file separate grievances, although he testified that he did understand there was a grievance process.

With respect to Sheriff Helder, Plaintiff testified that the Sheriff was not personally involved in any of the alleged constitutional deprivations. Plaintiff conceded he had no individual capacity claim against the Sheriff. Plaintiff believes, however, that he has an official capacity claim against the Sheriff because the alleged constitutional violations came about as a result of policies set in place by Sheriff Helder.

## II. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a

reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the non-moving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the non-moving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

Defendants argue they are entitled to summary judgment in their favor for the following reasons: (1) there is no proof of any personal involvement of Sheriff Helder; (2) Plaintiff failed to exhaust his administrative remedies as to certain claims; (3) Plaintiff was not subjected to unconstitutional conditions of confinement; (4) Plaintiff was not denied access to the Courts; (5) there was no retaliation against the Plaintiff; (6) Defendants are entitled to qualified immunity; and, (7) there is no basis for official capacity liability.

**A. Section 1983**

Section 1983 imposes civil liability upon one:

"who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

42 U.S.C. § 1983.

Governmental actors may be sued in both their individual and official capacities. *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998). Plaintiff has asserted both types of claims.

**B. Personal Involvement of Sheriff Helder**

Plaintiff has indicated his desire to dismiss his individual capacity claims against Sheriff Helder. Therefore, the Court need not address this issue.

**C. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. Failure to exhaust available administrative remedies is an affirmative defense, and Defendants have the burden of proving non-exhaustion. *See Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).

AO72A
(Rev. 8/82)

Here, Defendants argue Plaintiff failed to exhaust his administrative remedies when he failed to file a grievance about the following claims: not receiving a shave or haircut; the quality and type of exercise he could engage in; access to a television; not being able to see trees or grass outside; and, not receiving access to the Constitution or Bill of Rights.

The WCDC's procedure requires that a grievance be submitted via an electronic kiosk. *Defts' Ex.* A-2 at 20; *Defts' Ex.* A-3 at 19.[2] The grievance is to "state fully the time, date, and names of those detention officers and/or staff members involved and pertinent details of the incident, including the names of any witnesses." *Defts' Ex.* A-2 at 20. The grievance must be "submitted within eight hours from the time the event complained of occurred." *Defts' Ex.* A-3 at 19. Requests are also submitted via the kiosk. *Defts' Ex.* A-2 at 21.

No information has been submitted indicating how an inmate designates a grievance on the kiosk as opposed to a mere request. All kiosk entries made by Plaintiff that have been submitted to the Court contain request numbers. No entry is labeled a grievance. *Defts' Ex.* A-1. Despite this, Defendants concede that Plaintiff has exhausted the grievance procedure with respect to some of his claims. As noted below, a review of the record indicates Plaintiff did voice complaints on each of these topics. Defendants have failed to establish the affirmative defense of failure to exhaust administrative remedies.

**D. Unconstitutional Conditions of Confinement**

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and

---

[2] These documents were not part of the Plaintiff's jail file. Page references are to the CM/ECF page.

general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc., whether brought by pretrial detainees or convicted inmates). Prison condition claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was

substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels*, 382 F.3d at 875.

Plaintiff contends he was subjected to the following unconstitutional conditions of confinement: (1) denial of the right to shave or have a haircut except for court days; (2) denial of exercise equipment, access to the outdoors, and television; and, (3) having his second medical mattress taken away on multiple occasions.

### 1. Shave and/or Haircut

On August 3, 2014, Plaintiff requested a medical shave due to infected ingrown hairs. *Defts' Ex.* A-1 at 151. The response was "see nurse." *Id.* On November 11, 2014, he again asked for a medical shave. *Defts' Ex.* A-1 at 176. In response, he was told "medical staff no longer evaluates for medical shaves" and to ask a floor deputy. *Id.*

On January 17, 2015, Plaintiff complained that he was not given a hair cut for court and asked how to get one. *Defts' Ex.* A-1 at 190. On June 15, 2015, Plaintiff complained about not having been given a shave for court. *Defts' Ex.* A-1 at 240.

While Plaintiff may have felt degraded by not being allowed to shave or have his hair cut unless he had court or there was a medical reason, these rules did not deprive him of a single identifiable need. He suffered no adverse health consequences or physical injury.

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim. [O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMilliam*, 503 U.S. 1, 9 (1992); *Myers v. Hundley* 101 F.3d 542, 544 (8th Cir. 1996); *Howard v. Adkison*,

887 F.2d 134, 137 (8th Cir. 1989). Plaintiff's claim is clearly insufficient to meet that standard. Defendants are entitled to summary judgment on this claim.

### 2. Exercise, Recreation, Television

Plaintiff filed a request on July 8, 2014, stating they had no recreation yard, no television, and could only hear the radio for an hour a day. *Defts' Ex.* A-1 at 146. He complained about books being taken away when it was the only form of recreation they had. *Id.* On March 12, 2015, he submitted a request talking about his books having been taken and complaining that books were the only form of entertainment since there was no television and no recreation. *Id.* at 200. On March 18, 2015, Plaintiff complained that the jail was probably one out of two jails in the nation that did not allow recreation or television. *Id.* at 203. He submitted a second request that same day complaining about not being allowed television or recreation. *Id.* at 204. On April 3, 2015, Plaintiff complained about not having any recreation or media source other than a radio that he might be able to hear thirty minutes a day. *Id.* at 217. He believed the restrictions caused an increase in aggressive behavior among the inmates because they had little or nothing to do all day. He also complained that the only access to the outdoors they have is a walled in exercise yard. *Defts' Ex.* A-1 at 217. On May 28, 2015, Plaintiff complained about there being no means for inmates to exercise. *Id.* at 236.

A constitutional violation exists if prison officials are deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Among factors the court should consider in reviewing such a claim are: (1) the

AO72A
(Rev. 8/82)

opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and, (4) the duration of confinement. *Id.*

While Plaintiff claims not having outdoor recreation affected him mentally, he indicates he was able to exercise in the facility by walking and doing push-ups or sit-ups. Further, he testified that he was at times given the opportunity to go to the outside recreation yard. He testified the outside recreation area was not very hospitable since it was surrounded on all four sides by walls and had no type of exercise equipment. He does not claim that he suffered any injury as a result of not being able to exercise outdoors. *See Wishon,* 978 F.2d at 449 (to prevail Plaintiff must show that Defendants "were deliberately indifferent to his exercise needs").

Inmates have no constitutional right to watch television or listen to a radio. *Temple v. Dahm*, 905 F. Supp. 670, 674 (D. Neb. 1995); *see also Murphy v. Walker*, 51 F.3d 714, 718 n. 8 (7th Cir. 1995) ("We find no support in the case law for Murphy's claim that denying him ... television amounts to a constitutional violation"); *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (Equal Protection Claim-holding inmates have no fundamental right to in-cell cable television); *Manley v. Fordice*, 945 F. Supp. 132, 137 (S.D. Miss. 1996) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates"). While it might make incarceration less onerous, Plaintiff has no right to view television.[3] Defendants are entitled to summary judgment on this claim.

---

[3] Plaintiff testified that he was seeking access to television as a form of recreation not as a media source for news and information.

### 3. Medical Mattress

Plaintiff was at various times medically approved for a second mattress because of injuries he suffered to his pelvis and leg. On numerous occasions, Plaintiff testified his second mattress was taken from him allegedly because it was needed for another inmate who had no mattress. Plaintiff had a mattress to sleep on at all times. There were periods of time when Plaintiff also had a second blanket or towel. The evidence simply does not create a issue of material fact as to whether Plaintiff was deprived of "the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298. Defendants are entitled to summary judgment on this claim.

### D. Access to the Courts

On July 26, 2014, Plaintiff requested a copy of the United States Constitution and was told to contact his attorney. *Defts' Ex.* A-1 at 150. On November 17, 2014, Plaintiff asked for access to, among other things, the Constitution. *Id.* at 177. On January 14, 2015, Plaintiff stated he had been trying to get access to the Constitution for almost a year. *Id.* at 189. On March 27, 2015, Plaintiff again requested a copy of the Constitution. *Id.* at 210.

Plaintiff testified that he was not given access to the law library or legal materials including the Constitution and the Bill of Rights. He maintains it was difficult to know how to proceed because the lack of a law library handicapped him.

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (*citing, Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). In *Myers*, the Eighth Circuit stated that:

> "[t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts. To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all."

*Myers*, 101 F.3d at 544 (citations omitted).

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996) and *Bounds v. Smith*, 430 U.S. 817 (1977), "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

Here, Plaintiff was able to file his completed IFP application and the Complaint in this case. He also filed *Russell v. Washington County*, Civil No. 14-5168 (filed 6/9/2014) and *Russell v. Helder*, Civil No. 15-5112 (filed 5/19/2015). He missed no deadlines imposed by the Court. No case was dismissed because he failed to file documents with the Court. *See, e.g., Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic). As Plaintiff suffered no injury, this claim fails as a matter of law. Defendants are entitled to summary judgment on this claim.

AO72A
(Rev. 8/82)

### E. Retaliation

In *L.L. Nelson Entrs., Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012), the Court stated that:

> "[t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity."

*Id*. (internal quotation marks and citations omitted). "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). The filing of a grievance and the filing of a lawsuit is protected First Amendment activity. *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009).

"To avoid summary judgment, [Plaintiff] must submit affirmative evidence [of] retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (internal quotation marks and citation omitted). Because nearly every otherwise routine decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Further, the courts have recognized that prison officials must have broad administrative authority. *Id.* For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (speculative and conclusory allegations cannot support a retaliation claim).

-14-

In this case, Plaintiff has made only broad conclusory allegations that Marsh retaliated against him and/or singled him out for different treatment. Plaintiff alleges the protected activity was the filing of a lawsuit on June 9, 2014, *Russell v. Sheriff Helder and Dr. Neil Mullins.,* Civil No. 14-5168. Service was not ordered until October 1, 2014. Plaintiff complained of the behavior he contends was retaliatory prior to the filing of the lawsuit and service of process. *See Defts' Ex. A-1 at 10 & 146.* The mere existence of some animus between Plaintiff and Marsh does not equate to evidence of a retaliatory motive.

Accordingly, Plaintiff has failed to establish a viable retaliation claim. Defendants are entitled to summary judgment on this claim.

### F. Qualified Immunity

Defendants also contend they are entitled to qualified immunity. "Government officials are entitled to qualified immunity for discretionary decisions unless they violate a clearly established constitutional right." *Jones v. Minnesota Dept. of Corrections*, 512 F.3d 478, 484 (8th Cir. 2008) (citation omitted). Having concluded the Plaintiff failed to demonstrate the existence of a constitutional violation, Defendants are entitled to qualified immunity. *Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006) ("If the answer [to whether a constitutional rights was violated] is no, we grant qualified immunity").

### G. Official Capacity Claims

A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). "There are two basic

circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted). Plaintiff has made only conclusory allegations regarding the existence of any unconstitutional policy or custom with respect to any of his claims, and this clearly falls far short of suggesting the existence of an unconstitutional policy, custom, or practice.

### IV. Conclusion

For the reasons stated above, I recommend that the Motion for Summary Judgment (Doc. 22) be **GRANTED** and that this case be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of June, 2016.

/s/ Mark E. Ford
　HON. MARK E. FORD
　UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)